# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| CARLOS GONZALEZ, JR. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:07-CV-593-M (BH) |
| | § | |
| ABEL LOPEZ, | § | |
| | § | |
| Defendant. | § | Pretrial Management |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the District Court's *Standing Order of Reference*, filed April 9, 2007, this case was referred to this Court for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations to the District Court on dispositive motions. Before the Court are the following motions:

(1) *Defendant Abel Lopez's Motion for Summary Judgment* ("Mot."), filed July 3, 2007;

(2) *Brief in Support of Defendant Abel Lopez's Motion for Summary Judgment* ("Mot. Br."), filed July 3, 2007;

(3) *Appendix in Support of Defendant Abel Lopez's Motion for Summary Judgment* ("Mot. App."), filed July 3, 2007;

(4) *Response to Defendant Abel Lopez's Motion for Summary Judgment* ("Resp."), filed September 24, 2007;

(5) *Amended Appendix in Support of Response to Defendant Abel Lopez's Motion for Summary Judgment* ("Resp. App."), filed September 25, 2007;

(6) *Defendant Abel Lopez's Objections to Plaintiff's Amended Summary Judgment Appendix, Motion to Strike, and Brief in Support* ("Obj."), filed October 9, 2007;

(7) *Defendant's Reply to Plaintiff's Response to Defendant Abel Lopez's Motion for Summary Judgment* ("Reply"), filed October 9, 2007;

(8)     *Response to Defendant Abel Lopez's Objections to Plaintiff's Amended Summary Judgment Appendix, Motion to Strike* ("Obj. Resp."), filed October 16, 2007;

(9)     *Defendant's Reply to Plaintiff's Response to Defendant Abel Lopez's Objections to Plaintiff's Amended Summary Judgment Appendix, Motion to Strike* ("Obj. Reply"), filed October 31, 2007;

(10)    *Plaintiff's Motion to File DVD of "BC" in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment Under Seal* ("DVD Mot."), filed January 4, 2008;

(11)    *Defendant's Response to Plaintiff's Motion to File DVD of "BC" in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment Under Seal, and Brief in Support* ("DVD Mot. Resp."), filed January 16, 2008; and

(12)    *Plaintiff's Reply to Defendant's Response to Motion to File DVD of BC Under Seal*, ("DVD Mot. Reply"), filed January 18, 2008.

Having reviewed the pertinent filings above and the law applicable to the issues raised, the Court finds that Defendant's *Motion for Summary Judgment* should be **GRANTED**.

## I. BACKGROUND

On April 6, 2006, the Dallas Police Department ("DPD") received a report from EC that her 7-year old daughter, BC, had been sexually assaulted. (Mot. App. at 1; Resp. App., Ex. D at 6). The following day, the DPD assigned Officer Abel Lopez ("Defendant") to investigate the allegations of sexual abuse. (Mot. App. at 1). As part of his investigation, Defendant arranged for BC to speak with a forensic interviewer at the Dallas Children's Advocacy Center ("DCAC"). *Id.*

The forensic interviewer conducted his interview with BC at the DCAC on April 20, 2006. (*Id.*; Resp. App., Ex. D at 8). Defendant observed the interview with a social worker from Child Protective Services through a two-way mirror in a separate area. (Mot. App. at 1). Defendant avers that he heard the victim state that her Uncle Carlos grabbed her, removed her clothes, and touched her genitals in the garage of her Aunt Mari's house. *Id.* Following the interview, Defendant further

avers, he spoke with BC's mother who told him that the suspect's last name was "Gonzalez," that he was married to a person named Mari, that he was approximately in his 30s but that she did not know his date of birth, and that he lived at 2514 Emmett Street in Dallas, Texas. *Id*. Both the intake form from the DCAC completed on April 20, 2006, and the synopsis of the intake and interview completed by the DCAC forensic interviewer on May 5, 2006, identify Carlos Gonzalez's age as 50 years. (Resp. App., Ex. D at 4, 8-9).

During the course of his investigation into the identity of the alleged perpetrator, Defendant conducted a computer search of an unspecified public records database for the name "Carlos Gonzales." (Mot. App. at 2). Defendant avers that the name "Carlos Gonzales, Jr." appeared with an address of 2514 Emmett Street in Dallas and a date of birth of February 2, 1977. *Id*. Defendant also avers that this date of birth matched the approximate age of the alleged perpetrator; he further avers that at the time of his computer records search, "Carlos Gonzales, Jr." was the only name that appeared at the address on Emmett Street. *Id*. Based on the information from BC, his recollection of the conversation with BC's mother, and the results of the computer search, Defendant believed he had probable cause to make an affidavit for the arrest of Carlos Gonzalez, Jr. ("Plaintiff") for the offense of indecency with a child. *Id*.

Defendant submitted his affidavit for an arrest warrant on September 7, 2006. (Mot. App. at 7). The affidavit named Carlos Gonzalez, Jr., a 29-year old Hispanic male with the date of birth February 2, 1977, as the alleged perpetrator of indecency with a 7-year old girl. *Id*. Prior to the instant action, Defendant avers he had never seen or met Plaintiff. (*Id*. at 2). On September 7, 2006, a magistrate judge in the Dallas County District Court signed a warrant for Plaintiff's arrest. (*Id*. at 8). Four days later, on September 11, 2006, Plaintiff was arrested pursuant to the warrant. (*Id*.

at 2, 9).  Defendant was not present at the time of the arrest.  (*Id*. at 2).

An examining trial was held on October 16, 2006, to determine whether probable cause existed for Plaintiff's arrest.  *Id*.  Defendant appeared and testified at the examining trial pursuant to a subpoena; the subpoena did not request Defendant's case file nor did he bring any records from the file to the examining trial.  *Id*.  The issue of a possible mistake in identity of the suspect was raised at the examining trial; because of this, Defendant subsequently spoke with an unnamed Dallas police detective to determine whether the wrong person had been arrested.  *Id*.  After conducting another computer search of an unspecified public records database and reviewing the information in the file, Defendant and the unnamed Dallas police officer concluded that the correct person had been arrested.  *Id*.

A second examining trial was conducted on November 10, 2006.  (*Id*.; Resp. App., Ex. A).  Counsel for Plaintiff questioned Defendant whether the correct person had been arrested, but neither Defendant's affidavit nor the excerpt of his testimony provide any detail regarding his response to the question.  (*See* Mot. App. at 2; Resp. App., Ex. A, at 4-5).  At the conclusion of the evidence, the magistrate determined that probable cause existed for Plaintiff's arrest and ordered that the case proceed to the grand jury.  (Mot. App. at 2).

Because the issue of whether the correct person had been arrested was raised again at the second examining trial, Defendant avers that he immediately contacted BC's mother.  *Id*.  She informed Defendant that "Carlitos" (BC's cousin) had been arrested, and that his father, "Carlos" (BC's uncle) was the one who should have been arrested.  *Id*.  Thereafter, Defendant requested a release of charges against Plaintiff and proceeded to file charges against his father.  *Id*.  Defendant also informed the grand jury about the mistaken identity.  As a result of this information, the case

against Plaintiff was never presented to the grand jury, and Plaintiff was never indicted on the charges of indecency with a child. *Id.* On November 17, 2006, sixty-eight days after his arrest, a magistrate signed a release charge ordering Plaintiff to be released from the custody of the Dallas County Sheriff on the basis of an erroneously issued warrant. (*Id.* at 9).

Plaintiff filed the instant action on March 1, 2007, in the 193rd Judicial District Court in Dallas, Texas. After the case was removed to federal court, Plaintiff filed an amended complaint pursuant to 42 U.S.C. § 1983 alleging that Defendant intentionally or recklessly violated his rights under the Fourth and Fifth Amendments of the United States Constitution.[1] (*Amended Complaint and Jury Demand, Gonzalez v. Lopez*, No. 3:07-CV-593-M, at 3 (N.D. Tex. filed Oct. 10, 2007) (hereinafter, "Amend. Compl."). Plaintiff alleges that Defendant intentionally or recklessly failed to disclose salient facts showing that Plaintiff was not the alleged perpetrator and that a reasonable, well-trained officer would have known there was not probable cause to arrest Plaintiff. (*Id.* at 4). Plaintiff also alleges a second cause of action under Texas common law for malicious prosecution, asserting that Defendant acted with malice or reckless disregard in the course of the investigation and arrest of Plaintiff. (*Id.* at 4-5).

Defendant filed the instant motion for summary judgment on July 3, 2007. He asserts that he is entitled to the defense of qualified immunity because Plaintiff failed to state a constitutional violation, and because at all times relevant to the complaint, he acted in good faith and within his

---

[1] The Court notes that Plaintiff's original complaint alleges a violation under the Fourth and Fourteenth Amendments whereas the amended complaint alleges a violation under the Fourth and Fifth Amendments. *Plaintiff's Original Petition* at 3, ¶27, filed as part of *Defendant Abel Lopez's Notice of Removal and Brief, Gonzalez v. Lopez*, No. 3:07-CV-593-M, (N.D. Tex. filed Apr. 4, 2007); Amend. Compl. at 3, ¶32. Plaintiff later asserts that he was deprived of his rights guaranteed under the Fourth and Fourteenth Amendments but not under the Fifth Amendment. Amend. Compl. at 4, ¶38. To the extent that Plaintiff asserted a claim arising under the Fifth Amendment in the amended complaint, it remains pending for trial because Defendant did not move for summary judgment on that claim. (*See* Mot.).

discretionary authority as a DPD officer.  (Mot. at 4-5).

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists.  Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324.  To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor.  *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *id*. at 255 (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954

F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after

adequate time for discovery, the motion's opponent fails to establish the existence of an element

essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at

322-23. "The party opposing summary judgment is required to identify specific evidence in the

record and to articulate the precise manner in which that evidence supports his claim." *Ragas v.

Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

## III. EVIDENTIARY CONSIDERATIONS

### A.     Plaintiff's Motion to File DVD of BC

On January 4, 2008, Plaintiff sought leave to file the DVD recording of the victim's

interview with the forensic investigator at the DCAC.[2] (*See* DVD Mot.). Defendant objects to

Plaintiff's motion on three grounds: (1) Plaintiff failed to establish excusable neglect for the delay

in filing the DVD; (2) the DVD is not competent summary judgment evidence because it has not

been authenticated; and (3) the DVD does not create a genuine issue of material fact for trial. (DVD

Mot. Resp. at 2).

Defendant first contends that Plaintiff failed to establish excusable neglect for the delay in

filing the DVD. (DVD Mot. Resp. at 2). Pursuant to this Court's August 21, 2007 scheduling order,

Plaintiff's response and summary judgment evidence were due on September 24, 2007. Under Rule

6(b) of the Federal Rules of Civil Procedure, the court has discretion to permit untimely filings

where the failure to act was the result of excusable neglect. Fed. R. Civ. P. 6(b). The determination

of what constitutes "excusable neglect" is an equitable one. *Boggess v. Texas Mut. Ins. Co.*, 2007

---

[2]The DVD has been the subject of numerous filings before the court, including two motions and two
hearings. (*See* docket nos. 17, 19, 20, 23, 21, 25, 39, 40, 44, 45, 46, 47, 48, 49, and 50).

WL 748569, at *2 (N.D. Tex. Mar. 12, 2007) (Ramirez, M.J.) (citing *Pioneer Inv. Servs., Co. v. Brunswick Assocs., Ltd. P'ship*, 507 U.S. 380, 395 (1993). Relevant factors for the court to consider in determining whether excusable neglect exists include: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Id.*; *Adams v. Travelers Indem. Co. of Connecticut*, 465 F.3d 156, 162 n.8 (5th Cir. 2006).

Plaintiff's motion to file the DVD addresses none of the factors necessary to establish excusable neglect. (*See* DVD Mot.) Furthermore, the record reflects that Plaintiff's motion to file the DVD was filed well after the summary judgment evidence and briefing had closed, thus depriving Defendant of an opportunity to respond to the evidence. It is untimely by more than three months. Approximately a week prior to the deadline for submission of his response to the instant motion for summary judgment, Plaintiff viewed the DVD in the presence of Defendant's counsel. Even though Plaintiff determined at that time that the information therein was "extremely helpful" to his case, he chose not file a motion for continuance pursuant to Rule 56(f) to secure the DVD for his summary judgment response, but rather, to file an affidavit summarizing the DVD. Accordingly, the Court cannot find that Plaintiff has met his burden to show excusable neglect, and *Plaintiff's Motion to File DVD of BC* is hereby **DENIED**.[3]

---

[3]Since Defendant's objection on the grounds of excusable neglect is dispositive, the Court need not consider the second objection regarding the DVD's admissibility. The third objection, that the DVD does not raise a genuine issue of material fact, addresses the merits rather than admissibility.

**B.**     **Defendant's Objections**

**1.  Declaration of F. Clinton Broden**

Defendant objects to the Declaration of F. Clinton Broden on the grounds that it is inadmissible hearsay.  (Obj. at 2; *see* Resp. App., Ex. B).  The Broden Declaration summarizes the contents of the DVD showing the interview of BC at the DCAC.  Since the Broden Declaration is offered to prove that the victim allegedly made certain statements regarding the identity of her abuser and that Defendant was aware of these statements, it is inadmissible hearsay.  Fed. R. Evid. 802.  Counsel for Plaintiff contends that he summarized the DVD's contents in an attempt to avoid protracted litigation.  (Obj. Resp. at 1-2).  He further contends that counsel for Defendant did not object to the statement he made at the DVD viewing that he intended to prepare a summary.  Neither of these contentions changes the fact that his declaration is inadmissible hearsay.  Accordingly, Defendant's objection to the Broden Declaration is hereby **SUSTAINED**, and the motion to strike the declaration is **GRANTED**.

**2.  Declaration of EC**

Defendant also objects to the Declaration of EC (BC's mother) in its entirety, maintaining that there is "no basis" for admitting the declaration without a proffer that the translation was accurate or that the unidentified translator was competent to perform the Spanish-to-English translation.  (Obj. at 2).

The last numbered paragraph of the EC Declaration states, "[t]his affidavit was translated for me from English to Spanish."  (Resp. App., Ex. C, ¶8).  The declaration does not identify who translated the contents of the affidavit from English to Spanish for EC, nor does it provide any information about the qualifications of the interpreter.  (*See* Resp. App., Ex. C).  Citing to *Cruz v.*

*Aramark Services, Inc.*, Defendant argues that because the declaration does not meet the standards set out by the Fifth Circuit for treating a translator as a "conduit," the Court should not consider the EC Declaration. (Obj. 2-3) (citing 213 Fed. Appx. 329, 333-34 (5th Cir. 2007)). In *Cruz*, the Fifth Circuit upheld the district court's decision to reject an affidavit that had been translated from Spanish to English. 213 Fed. Appx. at 334. Except in unusual circumstances, "an interpreter is no more than a language conduit and therefore does not create an additional level of hearsay." *Id*. at 333 (quoting *United States v. Cordero*, 18 F.3d 1248, 1253 (5th Cir.1994)). However, in *Cruz* the Fifth Circuit explained that when "determining whether to treat a translator as a mere conduit, the [court] looks to: (1) which party supplied the interpreter; (2) whether the interpreter had any motive to mislead or distort; (3) the interpreter's qualifications and language skill; and (4) whether actions taken subsequent to the conversation were consistent with the statements as translated." *Id*. at 334 (citing *United States v. Martinez-Gaytan*, 213 F.3d 890, 892 (5th Cir. 2000)).

Plaintiff submitted no information about the identity of the translator or his/her qualifications or skills. The Court therefore cannot ascertain that the translator served only as a language conduit and did not create an additional level of hearsay. *Cordero*, 18 F.3d at 1253. Plaintiff asserts that there is no evidence that EC only speaks Spanish or why the document was translated for her, (Obj. Resp. at 2), but does not address the reason the affidavit was translated for EC in the first place. Accordingly, Defendant's objection to the EC Declaration is hereby **SUSTAINED**, and the motion to strike the declaration is **GRANTED**. *Diaz v. Carballo*, 2007 WL 2984663, *4 (N.D. Tex. Oct. 12, 2007) (Fish, C.J.) (sustaining objection to Spanish-to-English affidavit because it lacked information regarding the translator's identity, qualifications, and skills).

### 3. Declarations of J.P. Moore and Genevieve Nelson

Finally, Defendant objects to the Declaration of J.P. Moore and the Declaration of Genevieve Nelson. (Obj. at 4-6). None of the statements in either the Moore Declaration or the Nelson Declaration, even if considered by the court, affect the disposition of the pending *Motion for Summary Judgment*. Accordingly, Defendant's objections to Plaintiff's Exhibits F and G are **OVERRULED** as **moot** and the motion to strike is **DENIED** as to these exhibits. *See Continental Casualty Co. v. St. Paul Fire & Marine Ins. Co.*, 2006 WL 984690, at *1 n.6 (N.D. Tex. Apr. 14, 2006) (Fitzwater, J.) (overruling as moot objections to evidence that is not considered by the court in deciding motion for summary judgment).

## IV. ANALYSIS

Defendant moves for summary judgment on the grounds that Plaintiff is entitled to the defense of qualified immunity. He asserts that Plaintiff's claims of false arrest and malicious prosecution fail as a matter of law because Plaintiff cannot show a violation arising under the Fourth or Fourteenth Amendments of the United States Constitution or Texas common law. (Mot. at 4-5). He also asserts that even if Plaintiff stated a claim, at all times relevant to the complaint he acted in good faith and within his discretionary authority as a DPD officer. *Id.*

### A.    Legal Standard

A state official who is sued for a constitutional violation pursuant to § 1983 may assert the affirmative defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir.1992). Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved at the earliest possible stage in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Whether the conduct of which the plaintiff complains violated clearly established law is an essentially legal question. *White*, 959 F.3d at 544.

To determine whether a defendant is entitled to qualified immunity, the Fifth Circuit employs a three-part inquiry. *See Conroe Creosoting Co. v. Montgomery Cty., Tex.*, 249 F.3d 337, 340 (5th Cir. 2001). First, the court must determine whether the plaintiff alleged the violation of a federal constitutional or statutory right. *Id*. at 340. Assuming the facts alleged by the plaintiff are true, if the defendant did not violate a constitutional right, the court need inquire no further. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). If the court determines that plaintiff has alleged a violation of a constitutional right, the Court must then decide whether, at the time of the alleged violation, that right was clearly established at the time the defendant acted. *Conroe Creosoting*, 249 F.3d at 340. The second prong of the qualified immunity inquiry requires an assessment of whether the official's conduct would have been objectively reasonable at the time of the incident. *Id*. (citing *Shipp v. McMahon*, 234 F.3d 907, 911-12 (5th Cir. 2000)). "Even if an official's conduct violates a constitutional right, he is entitled to qualified immunity if the conduct was objectively reasonable." *McClendon v. City of Columbia*, 258 F.3d 432, 438 (5th Cir. 2001). Finally, the third part of the qualified immunity inquiry requires the court to "determine whether the record indicates that the violation occurred, or gives rise to a genuine issue of material fact as to whether the defendant actually engaged in the conduct that [is alleged to have] violated the clearly established right."

*Conroe Creosoting*, 249 F.3d at 340 (citing *Morris v. Dearborne*, 181 F.3d 657, 665-66 (5th Cir. 1999)). The burden is on the plaintiff to show the inapplicability of the qualified-immunity defense. *See McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).

**B.    Unlawful Arrest**

The Fourth Amendment of the United States Constitution, made applicable to the States by virtue of the Fourteenth Amendment, prohibits unreasonable searches and seizures. U.S. Const. amend. IV; *see* U.S. Const. amend. XIV, § 1. Generally, a search or seizure without probable cause or warrant is a violation of the Fourth Amendment. *See United States v. Jones*, 234 F.3d 234, 239 (5th Cir. 2000); *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) ("The right to be free from arrest without probable cause is a clearly established constitutional right."). While the Fourth Amendment protects against unlawful arrest, an erroneously identified person arrested under a facially valid warrant suffers no Fourth Amendment deprivation. *Baker v. McCollan*, 443 U.S. 137, 143-44 (1979). "Where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest. Such an arrest is not unconstitutional, and a complaint based on such an arrest is subject to dismissal for failure to state a claim." *Thomas v. Sams*, 734 F.2d 185, 191 (5th Cir. 1984) (citing *Rodriguez v. Ritchey*, 556 F.2d 1185, 1191 (5th Cir.1977) (en banc)). As long as an officer places all the facts supporting an arrest before an independent intermediary (such as a magistrate or grand jury) and does not maliciously withhold any relevant information, the intermediary's decision breaks the chain of causation for false arrest and insulates the initiating officer. *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994); *Hand v. Gary*, 838 F.2d 1420, 1427-28 (5th Cir. 1988).

Defendant asserts that Plaintiff failed to allege a violation of the constitutional right to be

free from unreasonable seizures because he was arrested pursuant to a facially valid arrest warrant. (Mot. Br. at 4). In support of this assertion, he cites to the arrest warrant signed by the Dallas County District Court magistrate judge on September 7, 2006. (Mot. App. at 8). The magistrate issued the warrant based on the information contained in Defendant's affidavit, which identified Plaintiff, a 29-year old Hispanic male with the date of birth of February 2, 1977, as the alleged perpetrator of indecency with a 7-year old girl. (*See id.* at 7). Defendant's affidavit was based upon the information known to him at the time, which included the allegations made by BC, the offense incident report, his discussion with BC's mother, and the results of a computer search for driver's license records. (Mot. App. at 2). Defendant further asserts that the affidavit contained all relevant facts related to the alleged abuse of which he was aware, and that there is no evidence that malice motivated him to withhold relevant information. (Mot. Br. at 5). Based on the facially valid arrest warrant and absence of evidence of malice, the Court finds that Defendant has met his initial burden to show there is no genuine issue of material fact that probable cause existed for Plaintiff's arrest. *Celotex*, 477 U.S. at 323; *see Keeley v. Cisco Sys.*, 2003 WL 21919771, *3 (N.D. Tex. Aug. 8, 2003) (Fitzwater, J.) (a defendant can meet its summary judgment obligation by pointing the court to the absence of evidence to support a required element of a plaintiff's case).

The burden now shifts to Plaintiff to direct the Court's attention to evidence in the record sufficient to establish a genuine issue of material fact regarding the existence of probable cause for Plaintiff's arrest. *Celotex*, 477 U.S. at 324. Plaintiff contends that Defendant withheld material information from the affidavit presented to the magistrate. (Resp. at 10). Specifically, Plaintiff contends that Defendant knew: (1) the alleged perpetrator of the abuse was 50 years old; (2) there were several people named Carlos Gonzalez related to the victim; and (3) the alleged perpetrator

shared a bedroom with Aunt Mari and lived at the Emmett Street address.  *Id.*

Plaintiff fails to identify any competent summary judgment evidence to support his assertions.  The only evidence before the Court related to the first allegation are the DCAC reports from BC's interview.  (*See* Resp. App., Ex. D at 4, 8).  These two reports clearly identify the alleged perpetrator as a 50 year old man, but Plaintiff presented no evidence that Defendant reviewed the reports or was aware of the specific information contained therein; nor did he present any evidence that Defendant maliciously withheld the correct age from the affidavit he prepared for the magistrate.  Moreover, the age stated in the affidavit, while now known to be incorrect, was based upon the results of Defendant's computer records search showing a person named Carlos Gonzalez, Jr. at the Emmett Street address and the Defendant's recollection of a conversation with BC's mother.  (Mot. App. at 2).  As for the second contention, Plaintiff presented no evidence that Defendant knew there were several individuals named Carlos Gonzalez or that he maliciously withheld this information from the magistrate.  Finally, as to the third contention, Plaintiff did not present any summary judgment evidence that Defendant knew the alleged perpetrator shared a bedroom with Aunt Mari at the Emmett Street address.  The testimony that allegedly supports the claim of knowledge is not part of the summary judgment record.  *See* Resp. at 10 n. 24 (citing pages 11-12 of Defendant's testimony); *cf.* Resp. App. at Ex. A (containing pages 5, 6, 10, and 18 of Defendant's testimony).  Nevertheless, Defendant's affidavit states that EC told him after BC's interview that the alleged perpetrator was married to a person named Mari and lived at 2514 Emmett Street in Dallas, Texas.  (Mot. App. at 1)  There is no evidence in the record that Defendant knew that *Plaintiff* was not the individual married to Aunt Mari, or that he did not live at the Emmett

Street address.[4]

Although the inclusion of the incorrect date of birth of the alleged perpetrator in the affidavit resulted in serious consequences for Plaintiff, Plaintiff has presented no evidence to show more than negligence or an innocent mistake by Defendant.[5]  *See Franks v. Delaware*, 438 U.S. 154, 171 (1978) (deliberate falsity or reckless disregard are required to deprive an arrest affidavit of probable cause; allegations of negligence or innocent mistake are insufficient).  Plaintiff's unsubstantiated allegations that Defendant "knew" certain facts which should have been disclosed to the magistrate are insufficient to create a genuine issue of material fact at the summary judgment stage.  *Little*, 37 F.3d at 1075.

Because Plaintiff failed to produce any evidence showing that Defendant's misreporting of the alleged perpetrator's date of birth constituted more than negligence, he has failed to show that the deliberations of the magistrate who signed the arrest warrant were tainted; he has therefore failed to show that the involvement of the independent intermediary did not break the chain of causation for his allegation of false arrest.  *Taylor*, 36 F.3d at 456; *Hand*, 838 F.2d at 1427-28; *Shields v.*

---

[4]Even if considered as competent summary judgment evidence, the DVD of BC's interview fails to raise a genuine issue of material fact.  During the interview, BC identified the alleged perpetrator as her uncle who shares a bedroom with her Aunt Mari at the Emmett Street address and whose last name is Gonzales.  (*See* DVD at 44:06-44:34, 47:50-49:15).  BC never gave an approximate age of the alleged perpetrator; she could only say that he was a "grown up."  (DVD at 44:30-45:00).  At most, these statements were sufficient to place Defendant on notice that the alleged perpetrator was an adult man with the last name of Gonzales who lived at the Emmett Street address with Aunt Mari.  Defendant concedes in his affidavit that he knew this information, and both the affidavit and warrant identify such an individual.  (Mot. App. at 1, 7-8).

[5]The Court notes that notwithstanding the translation deficiency in the Declaration of EC, *see Cruz,* 213 Fed. Appx. at 332 (allowing plaintiff additional time to cure the translation deficiency), it still fails to establish the allegation of a constitutional violation.  EC's Declaration states that after BC's interview, EC told Defendant that Carlos was at least 50 years old.  (Resp. App. Ex. C, ¶¶ 5, 7).  Even if taken as true and in the light most favorable to Plaintiff, EC's statement does not create a material issue of fact because Plaintiff has pointed to no evidence in the record that Defendant acted maliciously with deliberate falsity or reckless disregard.  The evidence presented by Defendant regarding his investigation and the facts other than age he considered in determining Carlos's identity remains undisputed.

*Twiss*, 389 F.3d 142, 150 (5th Cir. 2004) (conclusory allegations that information was withheld from grand jury insufficient to create a fact issue regarding unreasonable arrest or detention); *see Zarnow v. City of Wichita Falls, Tex*, 500 F.3d 401, 411 (5th Cir. 2007) (evidence that alleged misreporting of facts in an affidavit for warrant constituted more than negligence is required to show a constitutional violation). Accordingly, the Court finds that probable cause exited for Plaintiff's arrest.

Plaintiff cites a number of cases to advance his argument that the arrest lacked probable cause or that the magistrate's deliberations were tainted by Defendant's actions. (*See* Resp. at 7-9, 11 n. 25). In *Mohid v. Wheatley*, 1993 U.S. Dist. Lexis 5285, *12 (N.D. Tex. 1993) (Sanders, C.J.), the District Court found that the Defendant had not established entitlement to qualified immunity because he had in his possession the description and photocopies driver's license photograph of the actual suspect as well as a "profoundly dissimilar description and photograph" of the Plaintiff. Instead of confirming the plaintiff's identity, the defendant he relied solely upon a name not "uncommon in a major metropolitan area" and an easily duplicated driver's license number given by the actual suspect under circumstances that should have aroused suspicion in a reasonable police officer. *Id.* Here, in contrast, the affidavit of Defendant states he relied on several sources of information, and there is no evidence of his awareness of two potential suspects, much less a profoundly dissimilar description or photograph of either the alleged perpetrator or Plaintiff.[6] *See id.*; *see Taylor*, 36 F.3d at 456.

In *Brown v. Byer*, 870 F.2d 975, 978 (5th Cir. 1989), the investigating officer changed the

---

[6]The Court notes that the District Court decided *Mohid* prior to the Fifth Circuit's reaffirmation that the involvement of an independent intermediary breaks the chain of causation for false arrest. *See* 1993 U.S. Dist. Lexis 5285, *12; *see Taylor*, 36 F.3d at 456.

name and other information on previously issued warrants to match the information applicable to the plaintiff in that case. 870 F.2d at 976. Based on the facts of *Brown*, the Fifth Circuit determined that the jury was justified in finding that the plaintiff's arrest was unreasonable within the meaning of the Fourth Amendment. *Id.* at 979. In the instant case, there is no allegation that Defendant changed the information in the warrant after it was issued. Moreover, Defendant is not the officer who arrested Plaintiff; nor was he present at the time of Plaintiff's arrest. (Mot. App. at 2).

In *Garris v. Rowland*, 678 F.2d 1264 (5th Cir. 1982), the officer made the material misrepresentation that he had personal knowledge of the facts stated in his affidavit when in reality the "facts" were the product of fourth-hand hearsay. 678 F.2d at 1268. In the instant case, although Defendant provided the incorrect date of birth, the affidavit was based upon his personal investigation of the alleged offense. (*See* Mot. App. at 7).[7]

In sum, when the Court views the summary judgment evidence in the light most favorable to the non-movant, it finds that there is no genuine issue of material fact that probable cause existed for Plaintiff's arrest. Since a violation of false arrest under the Fourth Amendment requires the absence of probable cause, the Court finds that Plaintiff has failed to allege the violation of a constitutional right. Accordingly, Defendant is entitled to the defense of qualified immunity and summary judgment should be granted in favor of Defendant. *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001) (a claim of false arrest requires a showing of no probable cause); *Mangieri*, 29 F.3d at 1016. Because Defendant did not violate a constitutional right, the Court need not consider the second and third parts of the three-part inquiry into whether Defendant is entitled to qualified

---

[7]Plaintiff also cites to *Berg v. County of Allegheny* for the proposition that an erroneously issued arrest warrant deprived him of his rights under the Fourth Amendment. (Resp. at 11 n. 25 (citing 219 F.3d 261, 271 n.6 (3d Cir. 2000)). *Berg* is inconsistent with the well-settled law in this circuit that the involvement of an independent intermediary breaks the chain of causation for false arrest. *Hand*, 838 F.2d at 1427-28; *Taylor*, 36 F.3d at 456.

immunity.[8]  *See Saucier*, 533 U.S. at 200; *Conroe Creosoting*, 249 F.3d at 340.

## C.    Malicious Prosecution

Pursuant to 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over Plaintiff's claim of malicious prosecution under Texas common law.  Because summary judgment is recommended on the federal claims over which it has original jurisdiction, the Court must also decide whether to retain jurisdiction over the remaining state claim.  *Id.* at § 1367(c)(3).

Supplemental jurisdiction over state law claims is a "doctrine of discretion, not of plaintiff's right."  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).  Consequently, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims."  *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988).  When the federal claims are dismissed before trial and only state law claims remain, the balance of factors to be considered under the supplemental jurisdiction doctrine weigh heavily in favor of declining jurisdiction; therefore, the federal court

---

[8]Plaintiff asserts in his response an unpleaded Fourth amendment claim based upon Defendant's failure to take immediate action to drop the charges once he knew that the Plaintiff was not the alleged violator.  Resp. at 11; *see* Compl. at 3-4; Amend. Compl. at 3-4.  Because this claim was not raised in either the original or the amended complaint, he cannot raise it for the first time in his summary judgment response.  *See, e.g., Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.") (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)); *Days Inn Worldwide, Inc. v. Sonia Invs.*, 2006 WL 3103912, at *17 (N.D. Tex. Nov. 2, 2006) (Fitzwater, J.).

In addition, Plaintiff failed to present any evidence that he was unlawfully held in police custody after Defendant discovered the incorrect suspect had been arrested.  After the first examining trial, Defendant reviewed the information in the file, conducted another computer search, and erroneously concluded that the correct person had been arrested.  (Mot. App. at 2).  Immediately after the second examining trial on November 10, 2006, when the issue of identity again was raised, Defendant contacted EC who told him that the wrong person had been arrested.  *Id.*  Defendant then requested a release of charges against Plaintiff.  *Id.*  The release charge, which was prepared on November 16, 2006, and signed the following day, does not indicate the date on which Defendant requested the release.  (*See id.* at 9).  Plaintiff presented no evidence that Defendant was responsible for the week-long delay between the second examining trial and the date of the release charge.

-19-

should usually decline the exercise of jurisdiction over the remaining claims and send them to state court. *See id*. According to the Fifth Circuit, "[o]ur general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Company v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir.1992) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir.1989)).

For this reason, the Court recommends that Plaintiff's pendent state law claim of malicious prosecution be dismissed without prejudice.

## IV.  CONCLUSION

For the reasons stated above, the Court recommends that *Defendant Abel Lopez's Motion for Summary Judgment* be **GRANTED**.  Plaintiff's claims arising under 42 U.S.C. § 1983 should be **DISMISSED** with prejudice.  Plaintiff's claim of malicious prosecution arising under state law should be **DISMISSED** without prejudice.

**SO RECOMMENDED** on this 23rd day of January, 2008.

**IRMA CARRILLO RAMIREZ**
**UNITED STATES MAGISTRATE JUDGE**

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE